UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LOGAN BLÖMQVIST , et al.,<br><br>Plaintiffs,<br><br>v.<br><br>EXTRA SPACE STORAGE, INC., et al.,<br><br>Defendants. | Case No. 25-cv-07867-EKL<br><br>**ORDER GRANTING IFP, SCREENING COMPLAINT, AND DENYING TEMPORARY RESTRAINING ORDER**<br><br>Re: Dkt. No. 2, 3, 8, 12, 13 |

On September 16, 2025, self-represented Plaintiffs Logan Blömqvist and Todd Myers filed an ex parte application for a temporary restraining order ("TRO") and applications to proceed *in forma pauperis* ("IFP"). ECF Nos. 1-3. In the TRO application, Plaintiffs asked the Court to order Defendant Extra Space Storage, Inc. ("Extra Space") to grant Plaintiffs access to certain storage units, and to communicate with Plaintiffs exclusively by email. *Id*. at 1. Plaintiffs also sought to prohibit Extra Space and its employees Noreta Mendez and Jessica Brubaker (collectively, "Defendants") from harassing, intimidating, and retaliating against Plaintiffs. *Id.* The Court denied the TRO application as premature because Plaintiffs had not filed a complaint and, therefore, had not commenced an action against Defendants. *See* Fed. R. Civ. P. 3 ("A civil action is commenced by filing a complaint with the court."). The Court deferred ruling on the IFP applications, and informed Plaintiffs that it would screen any complaint pursuant to 28 U.S.C. § 1915(e)(2)(B). ECF No. 7.

On September 19, 2025, Plaintiffs filed a complaint alleging that they are being denied access to their respective storage units in violation of their leases and that they are being

United States District Court<br>Northern District of California

discriminated against on account of race and disability.[1]  ECF No. 8 ("Compl.").  Plaintiffs assert claims under 42 U.S.C. § 1983, 42 U.S.C. § 12181, 29 U.S.C. § 504, and various state laws.  *Id.*  On September 24, 2025, Plaintiffs filed another TRO application that seeks substantially the same relief as in the initial TRO application.  ECF No. 12 ("TRO Motion").  On October 9, 2025, Plaintiffs filed a motion to expedite the Court's ruling on the TRO Motion.  ECF No. 13 ("Motion to Expedite").

Having reviewed the relevant papers, Plaintiffs' IFP applications are GRANTED.  The Motion to Expedite is TERMINATED as moot in light of this Order.  For the reasons discussed below, the Court screens the complaint and finds that it must be DISMISSED for failure to state a claim over which the Court has jurisdiction.  The Court declines to exercise supplemental jurisdiction over Plaintiffs' potential state law claims because the Court has dismissed all claims over which it has original jurisdiction.  Because the complaint fails to state a claim, Plaintiffs have not met the standard for obtaining a TRO.  Therefore, the Court DENIES Plaintiffs' TRO Motion.

## I.    SCREENING OF THE COMPLAINT

Section 1915(e)(2) requires the Court to screen complaints filed by persons proceeding *in forma pauperis*.  The Court must identify any cognizable claims, and dismiss claims that are frivolous or malicious, fail to state a claim on which relief may be granted, or seek monetary relief against a defendant who is immune from such relief.  28 U.S.C. § 1915(e)(2)(B); *see also Lopez v. Smith,* 203 F.3d 1122, 1126-27 (9th Cir. 2000) (en banc).  For the following reasons, Plaintiffs fail to state a claim on which relief may be granted.

### A.    42 U.S.C. § 1983

Plaintiffs allege that Defendants "conspired" with state actors, *i.e.*, the police, to violate their constitutional rights by "knowingly fabricating police reports and otherwise inducing law enforcement to deprive Plaintiffs of" their rights.  Compl. ¶ 37.  Plaintiffs assert this claim under 42 U.S.C. § 1983, which provides a cause of action for civil rights violations.  To state a claim under Section 1983, a plaintiff must allege two essential elements:  (1) that "a right secured by the

United States District Court
Northern District of California

---

[1] The Court assumes the parties' familiarity with the facts of the case.  This Order references only those facts that are relevant to the Court's holding.

Constitution or laws of the United States" was violated, and (2) that the alleged violation was "committed by a person acting under the color of state law." *See West v. Atkins*, 487 U.S. 42, 48 (1988); *Ketchum v. Alameda Cnty.*, 811 F.2d 1243, 1245 (9th Cir. 1987). Here, Plaintiffs fail to allege Defendants were acting "under color of state law." Therefore, the Court need not reach the other element of Section 1983.

Defendants are private parties.[2] "[P]rivate parties are not generally acting under color of state law." *Price v. Hawaii,* 939 F.2d 702, 707-08 (9th Cir. 1991). In limited circumstances, however, private conduct may amount to acting "under color of state law," and courts apply various tests to make this determination. *See Sutton v. Providence St. Joseph Med. Ctr.*, 192 F.3d 826, 835-36 (9th Cir. 1999). The appropriate test here is the "joint action" test, whereby "courts examine whether state officials and private parties have acted in concert in effecting a particular deprivation of constitutional rights." *Franklin v. Fox*, 312 F.3d 423, 445 (9th Cir. 2002) (citation omitted). A plaintiff can demonstrate "joint action" by establishing "the existence of a conspiracy" between private actors and the government, *id.,* but doing so requires showing "an agreement or 'meeting of the minds' to violate constitutional rights," *Fonda v. Gray*, 707 F.2d 435, 438 (9th Cir. 1983) (citation omitted).

In the context of eviction or repossession, a private actor may act under color of state law when the private actor requests and receives *affirmative* assistance from the police in effectuating the eviction or repossession. *See Howerton v. Gabica*, 708 F.2d 380, 384-85 (9th Cir. 1983) ("[T]he circumstances surrounding the private eviction must be examined in their totality."). For example, in *Howerton*, the Ninth Circuit concluded that the defendants proceeded under color of state law because they "deliberately cloaked themselves with the authority of the state" by "repeatedly request[ing] aid by the police to effectuate the eviction" and because "the police intervened at every step [of the eviction]." *Id.* Under these circumstances, the Ninth Circuit concluded that the officer's actions "created an appearance that the police sanctioned the eviction." *Id.* at 384.

---

[2] Extra Space is a storage company, and the other Defendants are individuals that are "managers, agents, employees, or supervisors for Extra Space[.]" Compl. ¶¶ 3-4.

United States District Court
Northern District of California

The allegations in the complaint are insufficient to allege a conspiracy or joint action to violation Plaintiffs' rights. First, Plaintiffs do not allege that Defendants requested police intervention; to the contrary, *Plaintiffs* repeatedly requested police intervention. *Id.* ¶¶ 16, 20-21. Second, Plaintiffs allege that, on at least one occasion, the police intervened in *Plaintiffs'* favor by escorting them to one of the storage units to collect items. *Id.* ¶ 21. The officer also advised Plaintiffs that they could contact the police if it happened again, but "stressed that officers had no authority to change lease disputes and could only assist if asked to perform specific functions within the law." *Id.* ¶ 21. On a separate occasion, Blömqvist contacted the police to request assistance accessing Myers' storage unit – but Blömqvist is not alleged to be a lessee of that unit. Blömqvist was informed by the attending officer that "Plaintiffs could return to the site only if [Myers] was physically present and only to remove items[.]" *Id.* ¶ 16. Thus, based on the allegations in the complaint, the police were present at Plaintiffs' request, they partially assisted Plaintiffs, and they informed Plaintiffs of the circumstances under which they would be able to assist Plaintiffs in the future. The fact that the police did not intervene further in Plaintiffs' favor is insufficient to infer a conspiracy between Defendants and the police officers to deprive Plaintiffs of any constitutional right.

Based on the totality of the allegations in the complaint, Plaintiffs have failed to allege any agreement or meeting of the minds between Defendants and the police. *Fonda*, 707 F.2d at 438 (citation omitted) ("To prove a conspiracy between private parties and the government under § 1983, an agreement or 'meeting of the minds' to violate constitutional rights must be shown."). In addition, Plaintiffs' allegation that Defendants made false reports to police does not constitute acting under color of state law. *Mazzaferro v. Parisi*, No. C 16-05641 WHA, 2017 WL 1956850, at *2 (N.D. Cal. May 11, 2017) (citing *Lauter v. Anoufrieva*, 642 F. Supp. 2d 1060, 1087 (C.D. Cal. 2009)) (explaining that merely asserting that a "private individual" provided false information to the police is insufficient to allege a conspiracy under Section 1983). Therefore, the Section 1983 claim must be dismissed.

### B.    42 U.S.C. § 12181

Plaintiffs allege that Defendants discriminated against them based on their disabilities in

4

violation of Title III of the Americans with Disabilities Act ("ADA").  42 U.S.C. § 12181.  To state a discrimination claim under Title III, a plaintiff must show that:  (1) he is disabled as defined by the ADA; (2) the defendant is a private entity that owns, leases, or operates a place of public accommodation; (3) the defendant employed a discriminatory policy or practice; and (4) the defendant discriminated against the plaintiff based on the plaintiff's disability by failing to make a requested reasonable modification that was necessary to accommodate the plaintiff's disability. *Fortyune v. Am. Multi-Cinema, Inc.*, 364 F.3d 1075, 1082 (9th Cir. 2004) (citing 42 U.S.C. §§ 12182(a) and (b)(2)(A)(ii)).  The focus of the fourth element is whether the denied modification is necessary to afford the plaintiff access to the defendant's "goods, services, facilities, privileges, advantages, or accommodations."  42 U.S.C. §§ 12182(a) and (b)(2)(A)(ii).

Here, Plaintiffs allege that Blömqvist is disabled due to PTSD, a "cardiac condition," and "other medical issues," and that Extra Space is a place of public accommodation.  Compl. ¶¶ 1, 27.[3]  Plaintiffs further allege that in September 2025, Blömqvist requested four "reasonable modifications":  assistance with retrieving medications, no lock placed on her unit "pending court action," recognition of Myers' authorization for Blömqvist to act on his behalf, and email-only communications.  *Id.* ¶ 14.  Plaintiffs allege that Defendants discriminated against them by failing to make these modifications.  As discussed below, Plaintiffs have not plausibly alleged the third and fourth elements of their Title III claim.

As to the third element – a discriminatory policy or practice – the Court cannot discern what policy or practice Plaintiffs are challenging, and whether such policy or practice is discriminatory.  On its face, the complaint does not identify any conduct that expressly discriminates on the basis of disability, nor does it allege a facially neutral policy that imposes a "different and greater burden" on disabled persons.  *See Szwanek v. Jack in the Box, Inc.*, No. 20-16942, 2021 WL 5104372, at *1 (9th Cir. Nov. 3, 2021) ("A facially neutral policy, like the one at

---

[3] The complaint makes references to both Plaintiffs being "individuals with disabilities who requested reasonable modifications," but there are no allegations as to Myers' disabilities or requests for reasonable modifications.  Thus, Myers has not stated an ADA claim.  Even if Myers had made these allegations, his ADA claim would fail for the same reasons Blömqvist's ADA claim fails.

United States District Court
Northern District of California

issue here, violates the ADA only if it burdens a plaintiff 'in a manner different and greater than it burdens others.'").

To the extent Plaintiffs contend Extra Space's lock-out policy is discriminatory, the Court finds that Plaintiffs have not plausibly alleged this theory. The policy as alleged is facially neutral – Extra Space initiated its lock-out procedures against Plaintiffs as a result of contractual disputes between the parties, not on the express basis of their disabilities. Compl. ¶¶ 11, 15. Because the lock-out policy is facially neutral, Plaintiffs must allege that the policy placed a "different and greater burden" on Plaintiffs due to their disabilities. Plaintiffs have not done so. Rather, the policy appears to treat those with and without disabilities in an identical manner – limiting access to storage units pending resolution of contract disputes. The Court finds no basis in the complaint to infer that the policy burdens people with disabilities in a "different and greater" manner than those without disabilities. Thus, Plaintiffs have failed to allege a discriminatory policy or practice under the third element, rendering Plaintiffs' ADA claim insufficient.[4]

As to fourth element – the alleged failure to provide reasonable modifications – Plaintiffs have not alleged that the requested modifications are necessary to accommodate individuals with PTSD or cardiac conditions, *i.e.*, Plaintiffs' alleged disabilities. *See Fortyune*, 364 F.3d at 1082. The purpose of Title III of the ADA is to ensure that individuals with disabilities are not excluded from "the full and equal enjoyment" of any place of public accommodation *on account of their disability*. 42 U.S.C. § 12182. Thus, Plaintiffs must allege some nexus between the requested modifications and the accessibility needs of individuals with the alleged disabilities. *See Burns v. Humboldt Recovery Ctr., Inc.*, No. 22-CV-00880-HSG, 2022 WL 2191829, at *2 (N.D. Cal. May 18, 2022). *Burns* is illustrative. In *Burns*, the plaintiff alleged discrimination based on a treatment center's refusal to grant the plaintiff's requested modification (consumption of energy drinks), which stemmed from his disability (severe depression). The court found that the center's prohibition on energy drinks did not discriminate against those with severe depression because energy drinks are not consumed solely by individuals with severe depression and the prohibition

United States District Court
Northern District of California

---

[4] Although the failure to allege the third element prevents Plaintiffs' claim from proceeding, the Court briefly addresses the fourth element.

applied equally to all participants of the center's treatment program. *Id.* Thus, the court concluded that "allow[ing] consumption of energy drinks by its program participants is not 'necessary' to afford [the recovery center's] services or facilities to individuals suffering severe depression, even if it is necessary to allow Plaintiff to access [the recovery center's] services[.]" *Id.* (screening the case and finding that Plaintiff failed to state a claim).

Here, too, Plaintiffs have failed to allege how the requested modifications would accommodate disability access needs as to PTSD or cardiac conditions. Moreover, as discussed above, Plaintiffs have not alleged that they are being treated any differently than individuals without disabilities. *Weyer v. Twentieth Century Fox Film Corp.*, 198 F.3d 1104, 1116 (9th Cir. 2000) ("[T]there is no discrimination under the [ADA] where disabled individuals are given the same opportunity as everyone else[.]") Thus, Plaintiffs have failed to adequately plead the fourth element of a Title III claim.[5]

**C.      29 U.S.C. § 504**

Under 29 U.S.C. § 504, public entities are required "to make benefits, services, and programs accessible to people with disabilities." *Updike v. Multnomah Cnty,* 870 F.3d 939, 949 (9th Cir. 2017). To bring a Section 504 claim, a plaintiff must show that (1) he is an individual with a disability; (2) he is otherwise qualified to receive the benefit; (3) he was denied the benefits of the program solely by reason of his disability; and (4) the program receives federal financial assistance. *Guthrey v. Alta Cal. Reg'l Ctr.*, No. 23-16056, 2024 WL 4002911, at *2 (9th Cir. Aug. 30, 2024) (citing *Updike*, 870 F.3d at 949). Plaintiffs do not allege that any Defendant receives federal financial assistance. *See* Compl. ¶ 29 ("To the extent any defendant receives federal financial assistance (information will be provided when verified) . . . ."). In addition, Plaintiffs fail to allege that any purported discrimination was "solely by reason of" their disability. Accordingly, Plaintiffs have failed to plead a Section 504 claim.

---

[5] In addition, Plaintiffs have not plausibly alleged that the "email-only" modification is a "reasonable" accommodation. The complaint alleges that Plaintiffs repeatedly appeared in person at the storage facilities on their own accord, yet offers no explanation as to how Defendants could engage with Plaintiffs solely via email under these circumstances. Compl. ¶¶ 15-22.

United States District Court
Northern District of California

United States District Court
Northern District of California

### D.    State Law Claims

Plaintiffs have failed to state a claim under 42 U.S.C. § 1983, 42 U.S.C. § 12181, or 29 U.S.C. § 504.  Plaintiffs have not alleged that the Court has diversity jurisdiction over their state law claims.  Therefore, the Court declines to exercise supplemental jurisdiction over Plaintiffs' potential state law claims because the Court has dismissed all claims over which it has original jurisdiction.  *See Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 561 (9th Cir. 2010) (citation omitted) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine – judicial economy, convenience, fairness, and comity – will point toward declining to exercise jurisdiction over the remaining state-law claims." (original brackets)).

Because the Court is not exercising jurisdiction over the state law claims, the Court likewise declines to screen Plaintiffs' state law claims and makes no determination as to the plausibility of these claims.  As discussed below, the Court grants Plaintiffs leave to amend their complaint.  In the amended complaint, Plaintiffs may reallege their state law claims, but should be mindful that the Court will screen the amended complaint pursuant to 28 U.S.C. § 1915(e)(2)(B). If Plaintiffs fail to state a claim over which the Court has jurisdiction, the Court will dismiss Plaintiffs' state law claims for a lack of subject matter jurisdiction.  Alternatively, Plaintiffs may choose to pursue their state law claims, such as their breach of contract, conversion, and California Self-Storage Facility Act claims, in state court.

## II.    LEAVE TO AMEND THE COMPLAINT

Because this is the Court's first ruling on the legal sufficiency of Plaintiffs' claims, and because Plaintiffs are self-represented, the Court GRANTS leave to amend the complaint. However, Plaintiffs are advised that the Court may dismiss the complaint without granting further leave to amend if Plaintiffs fail to plausibly allege a claim in the amended complaint.

The Court also advises Plaintiffs that the District Court has a guide for *pro se* litigants called Representing Yourself in Federal Court:  A Handbook for Pro Se Litigants (https://cand.uscourts.gov/pro-se-handbook/), which provides instructions on how to proceed with a civil case.  Plaintiff can access the guide, and additional resources for *pro se* litigants, on the

8

Northern District Court's website (https://cand.uscourts.gov/pro-se-litigants/).

## III.     MOTION FOR TEMPORARY RESTRAINING ORDER

Plaintiffs' motion for a temporary restraining order and preliminary injunction must be denied for two reasons.

First, the Court may issue a temporary restraining order without notice only if: (1) "specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition," and (2) the movant "certifies in writing any efforts made to give notice and the reasons why it should not be required." Fed. R. Civ. P. 65(b)(1). Plaintiff has not satisfied either requirement. Additionally, the Court "may issue a preliminary injunction only on notice to the adverse party." Fed. R. Civ. P. 65(a)(1). Plaintiff has not filed any proof that notice of the TRO Motion was provided to Defendants. Thus, the TRO Motion is improper.

Second, Plaintiffs have not satisfied the standard for obtaining the "extraordinary remedy" of a temporary restraining order or preliminary injunction. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008); *see also Washington v. Trump*, 847 F.3d 1151, 1159 n.3 (9th Cir. 2017) (holding that the standards for issuing a temporary restraining order and a preliminary injunction are substantially identical). Among other elements, Plaintiffs must establish that they are likely to succeed on the merits. *Winter*, 555 U.S. at 20. Alternatively, Plaintiffs must raise "serious questions going to the merits" of their claim and show that "the balance of hardships tips sharply in [the movant's] favor." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). To raise serious questions, the movant's claim must be more than just "plausible." *Where Do We Go Berkeley v. Cal. Dep't of Transp.*, 32 F.4th 852, 863 (9th Cir. 2022). Here, for the reasons discussed above, Plaintiffs have not alleged a plausible claim over which the Court has subject matter jurisdiction. Therefore, by definition, Plaintiffs have not raised serious questions going to the merits of their claims, and they have not demonstrated a likelihood of success. Because this element is lacking, Plaintiffs are not entitled to a preliminary injunction. The Court notes that even if these elements were met, the remedy in this case could not be unencumbered access to the storage units indefinitely and without payment.

United States District Court
Northern District of California

For these reasons, the TRO Motion is DENIED.

## IV.    CONCLUSION

The Court ORDERS as follows:

1.  The Court GRANTS Plaintiffs' IFP Applications.

2.  The Court DISMISSES Plaintiffs' complaint with leave to amend.  Upon review of the complaint, the Court finds it does not state a cognizable claim over which the Court has original jurisdiction.  Plaintiffs are granted leave to file an amended complaint by November 6, 2025.  If the amended complaint does not cure the deficiencies discussed in this Order, the Court may issue an order dismissing the complaint without leave to amend.

3.   The Court DECLINES to screen Plaintiffs' state law claims and makes no determination as to the plausibility of these claims at this time.  In the alternative of pursuing these claims in federal court, Plaintiffs may choose to file their state law claims in the Santa Clara County Superior Court, or another state court as appropriate.

4.  The Court DENIES Plaintiffs' TRO Motion.

5.  The Court TERMINATES Plaintiffs' Motion to Expedite as moot.

**IT IS SO ORDERED.**

Dated:  October 17, 2025

Eumi K. Lee
United States District Judge

United States District Court
Northern District of California

10